1  Michael and Kathleen Madden
   5956 Ruthwood Drive
2  Calabasas, CA 91302

3  Telephone: 818-879-0858
   email: brdcstr@icloud.com

4  Plaintiffs in Pro se

5

6

7

8

9              IN THE UNITED STATES DISTRICT COURT

10            FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12 | MICHAEL MADDEN, Successor-in-        Case No. 1:18-cv-00255-DAD-BAM
   | Interest to Ryan P. Madden, et al.,
13 |                                       PLAINTIFFS' OPPOSITION TO DEFENDANTS'
   |                      Plaintiffs,      MOTION TO DISMISS; SUPPORTING
14 |                                       EXHIBITS
   |      v.
15 |
   | DENNIS G. HICKS, et al.,
16 |
   |                      Defendants.      Honorable Barbara A. McAuliffe
17 |                                       United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28



FILED

NOV 0 2 2020

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
         DEPUTY CLERK

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . 2

LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . 3

   I. Due to the Lengthy Period of Time Spent Exhausting
      Administrative Remedies, Tolling Renders All of
      Plaintiffs' State Law Claims Timely . . . . . . . . . 3

  II. The Factual Allegations Set Forth in Plaintiffs'
      Complaint are Sufficient to State a Claim Against
      Defendant Silva for his Violation of the Bane Act . . . . . . . . 6

 III. Plaintiffs' Factual Allegations are Sufficient to
      State a First Amendment Retaliation Claim Against
      Silva . . . . . . . . . . . . . . . . . . . . . . . 8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . 12

EXHIBITS

  EXHIBIT 1: Declaration of Kathleen Madden . . . . . . . . . . 13

  EXHIBIT 2: •Certified Mail Receipt . . . . . . . . . . . . . 17
           •Letter from Michael Madden; Dated: Dec. 29, 2016 . . . . . 18

  EXHIBIT 3: Appeal Log# CSP-COR-3-17-00137 . . . . . . . . 19

  EXHIBIT 4: Inmate Appeal Screening Notice, Appeal
         Log# CSP-COR-4-17-01386; Dated: April 19, 2017 . . . . . . 27

  EXHIBIT 5: CDCR Form 22 Inmate Request; Dated: July 17, 2017 . . . . . 29

  EXHIBIT 6: Inmate Appeal, Challenging Cancellation of Appeal
         Log# CSP-COR-3-17-00137; Dated: October 30, 2017 . . . . . 32

  EXHIBIT 7: •Letter from Plaintiffs; Dated: August 2, 2019 . . . . . 36
           •Notarized Records Request; Dated: August 27, 2019 . . . . 37

  EXHIBIT 8: Email from Kathleen Madden; Dated: Sept. 25, 2020 . . . 38

  EXHIBIT 9: Letter From Kathleen Madden; Dated: Sept. 25, 2020 . . . . 41

# TABLE OF AUTHORITIES

**CASE**                                                            **PAGE**

Allen v. City of Sacramento,
(2015) 234 Cal.App.4th 41 . . . . . . . . . . . . . . . . . . . . 6,7

Ashcroft v. Iqbal,
556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . 9

Beauchamp v. Delatorre,
2014 U.S. Dist LEXIS 203530(N.D. Cal., Dec. 16, 2014) . . . . . .4

Brodheim v. Cry,
584 F.3d 1262 (9th Cir. 2009). . . . . . . . . . . . . . . . . 9,11

Brown v. Valoff,
422 F.3d 926 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . 4

Gress v. Smith,
2016 U.S. Dist. LEXIS 8949 (E.D. Cal., Jan. 26, 2016). . . . . . 5

Hebbe v. Pliler,
627 F.3d 338 (9th Cir. 2010) . . . . . . . . . . . . . . . . . 3,6

Jones v. Wong,
2018 U.S. Dist. LEXIS 85073 (E.D. Cal., May 18, 2018) . . . . . 4

Mendiondo v. Centinela Hosp. Med. Ctr.,
521 F.3d 1097 (9th Cir. 2008) . . . . . . . . . . . . . . . . . 2

Muhammad v. Close,
379 F.3d 413 (6th Cir. 2004) . . . . . . . . . . . . . . . . . 9

Muhammad v. Garrett,
66 F.Supp.3d 1287 (E.D. Cal. 2014) . . . . . . . . . . . . . . 7,8

Pratt v. Rowland,
65 F.3d 802 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . 9

Rhodes v. Robinson,
408 F.3d 559 (9th Cir. 2005) . . . . . . . . . . . . . . . . . 9

Shwarz v. United States,
234 F.3d 428 (9th Cir. 2000) . . . . . . . . . . . . . . . . . 2

Watison v. Carter,
668 F.3d 1108 (9th Cir. 2012) . . . . . . . . . . . . . . . . . 3,9

Wright v. California,
(2004) 122 Cal.App.4th 659 . . . . . . . . . . . . . . . . . . 4

**UNITED STATES CONSTITUTION**

First Amendment . . . . . . . . . . . . . . . . . . . . 1,2,8,9,11

**FEDERAL STATUTES**

42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . 2

# TABLE OF AUTHORITIES (CONTINUED)

**FEDERAL COURT RULES**                                          PAGE

Fed. R. Civ. Proc. 8(a)(2) . . . . . . . . . . . . . . . . . . 10

Fed. R. Civ. Proc. 11(b)(3) . . . . . . . . . . . . . . . . . 12

Fed. R. Civ. Proc. 12(b)(6) . . . . . . . . . . . . . . . . 1,2,5

**CALIFORNIA STATUTES**

Civil Code §52.1 . . . . . . . . . . . . . . . . . . . . . . . 1

Civil Code §52.1(k) . . . . . . . . . . . . . . . . . . . . . 7

Government Code §810 . . . . . . . . . . . . . . . . . . . . . 3

Government Code §911.2 . . . . . . . . . . . . . . . . . . . . 3

Government Code §945.6(a)(1) . . . . . . . . . . . . . . . . . 3

iii

## INTRODUCTION

This action arises from a brutal attack inflicted upon Ryan P. Madden (hereafter "Decedent"), while he was a state prisoner, incarcerated at the California State Prison-Corcoran ("COR"). In sum, Decedent was subjected to extreme violence and retaliation by Defendant Dennis G. Hicks ("Hicks"), without cause, and was subsequently threatened with fraudulent disciplinary charges and placement in administrative segregation ("ASU") by Defendant Edward Silva ("Silva"), if he chose to formally complain about the abuse committed by Hicks. (ECF No. 1, at ¶12-21).

Sadly, Decedent passed away prematurely on March 31, 2019, after which his parents, Michael and Kathleen Madden, were substituted into this action on Decedent's behalf, as his Successors-in-Interest under California law, and are now the Plaintiffs in this action.

Now, pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Hicks and Silva seek dismissal of all state law claims in this action, arguing that they are untimely because Decedent allegedly failed to comply with the applicable statute of limitations under California law for bringing such claims. (See ECF No. 31, at 1). In addition, Silva also asks this Court to dismiss the First Amendment retaliation claim pending against him, based on the contention that there are insufficient facts to sustain this claim.

As will be demonstrated infra, all of Plaintiffs' state law claims are in fact timely, because they are entitled to tolling for the lengthy period of time that Decedent spent exhausting his administrative remedies through the grievance process maintained by the California Department of Corrections and Rehabilitation ("CDCR"). Moreover, it will also be shown that sufficient facts have been plead to state valid claims against Silva for retaliation, and for his violation of California's Bane Act (California Civil Code §52.1).

1

## PROCEDURAL HISTORY

On February 22, 2018, Decedent Ryan P. Madden first initiated the instant action, pursuant to 42 U.S.C. §1983 and applicable provisions of relevant California tort law, raising claims against Defendants Hicks and Silva for assault, battery, interference with the exercise of his constitutional rights, retaliation, and unreasonable and excessive use of force.(ECF No. 1).

While still in CDCR custody, Decedent passed away on March 31, 2019. (ECF No. 20). Thereafter, on April 22, 2019, Plaintiffs filed a motion seeking to be substituted into this action as Decedent's successors-in-interest.(ECF No. 21). On March 10, 2020, this Court granted their motion, and Decedent's parents were formally substituted in as the new Plaintiffs in this matter.(ECF No. 24).

On July 15, 2020, Defendants filed a motion in this case, seeking the dismissal of all of Plaintiffs' state law claims, as well as the First Amendment retaliation claim against Silva.(ECF No. 31). After seeking two extensions of time, Plaintiffs come now with the instant Opposition to Defendants' motion to dismiss.

## LEGAL STANDARD

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) is meant to test the sufficiency of claims raised in a Complaint. However, "[d]ismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." **Mendiondo v. Centinela Hosp. Med. Ctr.**, 521 F.3d 1097, 1104 (9th Cir. 2008).

When evaluating a motion under Rule 12(b)(6), a Court is required to accept all factual allegations raised in the Complaint as true, and it must construe all pleadings in the light most favorable to the non-moving party. See **Shwarz v. United States**, 234 F.3d 428, 435(9th Cir. 2000). If resolution of a motion under Rule 12(b)(6) requires consideration of evidence outside of the Complaint,

the motion should be denied.

Of particular importance, "[d]ismissal is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him to relief."**Watison v. Carter**, 668 F.3d 1108, 1112(9th Cir. 2012). Furthermore, when the challenged claim arises from facts set forth in the pleading of a pro se litigant, the Court is required to "construe the pleadings liberally and to afford the [plaintiff] the benefit of any doubt." **Hebbe v. Pliler**, 627 F.3d 338, 342 n.7 (9th Cir. 2010).

**ARGUMENT**

**I. Due to the Lengthy Period of Time Spent Exhausting Administrative Remedies, Tolling Renders All of Plaintiffs' State Law Claims Timely**

In support of their motion to dismiss, Defendants argue that all of Plaintiffs' state law claims are untimely, because Decedent did not file the instant action within six-months of the issuance of the denial of his claims by California's Department of General Services ("DGS").(See ECF No. 31-1, at 5-7).

Indeed, Defendants are correct that Decedent was required to comply with the strictures of the California Government Claims Act (California Government Code §810, et seq.), with respect to the state law claims raised in this matter. In fact, as a prerequisite to bringing a civil action against state prison officials, for conduct alleged to constitute assault, battery, and a violation of the Bane Act, California law mandates the presentation of such claims to the DGS within six months of their accrual. See Gov't Code §911.2. Further, when the DGS formally rejects such claims in writing, the Claimant is generally required to initiate Court proceedings on those claims within six months of the date of the DGS' denial. See Gov't Code §945.6(a)(1).

In raising this defense, Defendants have omitted one critical caveat, which dramatically impacts the duties identified above. That crucial point is the fact that the claims in this case arise from the actions of prison officials

3

1  against a California prisoner. Under the laws of this State, when a prisoner
2  seeks to bring tort claims against such officials, they have an obligation to
3  first exhaust two different forms of administrative remedies before they are
4  entitled to redress such misconduct through the Courts.

5      Separate and distinct from the provisions of the DGS' Government Claims
6  process, a prisoner must also exhaust their administrative remedies through all
7  levels of review offered through the CDCR's grievance system. See **Wright v.**
8  **California**(2004) 122 Cal.App.4th 659, 671. Only after a prisoner's claims have
9  been exhausted in full, through these two different systems of administrative
10 review, may they bring their claims in Court.

11     Due to this unique, dual process, it is firmly established under California
12 law that a prisoner is entitled to tolling of the statute of limitations, for the
13 period of time spent exhausting their administrative remedies as part of the
14 prison's grievance system. This remains the case, even when the DGS has already
15 rejected the prisoner's claims, and their prison grievance remains under
16 review by CDCR staff. Under that scenerio, the relevant six-month statute of
17 limitations does not begin to run until after the inmate's prison grievance has
18 been addressed at all levels of review. See **Wright**, 122 Cal.App.4th at 671(the
19 "time during which a litigant reasonably pursues his administrative remedies is
20 excluded from the six-month time limit for filing a court action after [the]
21 VCGCB rejects a tort claim.").

22     Moreover, it is well recognized in this District that the application of
23 tolling, as outlined in **Wright**, is controlling on this question for state law
24 claims brought pursuant to this Court's supplemental jurisdiction. See **Brown v.**
25 **Valoff**, 422 F.3d 926, 942–943(9th Cir. 2004); **Beauchamp v. Delatorre**, 2014 U.S.
26 Dist. LEXIS 203530, at *19–20(N.D. Cal., December 16, 2014); **Jones v. Wong**,
27 2018 U.S. Dist. LEXIS 85073, at *16–17(E.D. Cal., May 18, 2018).

28

                                        4

Although the Defendants have presented the Court with materials that are subject to judicial notice, in an effort to have Plaintiffs' state law claims dismissed, their intended use of such records must be rejected. While the Court is permitted to take judicial notice of the DGS records presented by Defendants, and may in fact accept them for the truth of when Decedent's claims were rejected by that entity, the records in question may not be considered as determinative of the proposition that Plaintiffs' state law claims are time barred.

Plaintiffs assert that they are entitled to tolling of the limitations period enumerated within the Government Claims Act. Despite the restrictions on this Court's ability to consider extraneous evidence, with this Opposition Plaintiffs have presented evidence demonstrating that Decedent was attempting to exhaust his prison administrative remedies from December 29, 2016, until approximately January of 2018. (See attached **Exhibit ["Ex."] 1**, at ¶2-3; **Ex. 2-6**). Although Plaintiffs have taken numerous steps to obtain all records from the CDCR, pertaining to Decedent's exhaustion efforts, such pursuits have been largely unsuccessful. (See **Ex. 1**, at ¶4-7; **Ex. 7-9**).

Nevertheless, tolling does apply to Decedent's exhaustion efforts, which will render all of Plaintiffs' state law claims timely. However, because this issue was presented to the Court through a Motion to Dismiss, Defendants' challenge must be rejected in whole. Plaintiffs' Complaint properly pleads compliance with California's Government Claims Act, (See **ECF No. 1**, at ¶41), and they have brought a viable claim of their right to tolling. As such, Defendants' have failed to meet their burden under Rule 12(b)(6), because the question of Decedent's exhaustion efforts, and Plaintiffs' right to tolling, requires consideration of evidence outside of the record. See **Gress v. Smith**, 2016 U.S. Dist. LEXIS 8949, at *11-12(E.D. Cal., January 26, 2016).

5

**II. The Factual Allegations Set Forth in Plaintiffs' Complaint are Sufficient to State a Claim Against Defendant Silva for his Violation of the Bane Act**

Apart from their untimeliness defense, Defendant Silva also challenges this Court's finding that Plaintiffs have alleged sufficient facts to state a claim for Silva's violation of the Bane Act.(ECF No. 31-1, at 7-9). In essence, Silva faults Decedent for failing to specifically include in the Complaint a separate cause of action, accusing Silva of violating the Bane Act, and he contends that the Court has exceeded its authority by allegedly supplying essential elements of this claim in its screening order, which are purportedly not found within Plaintiffs' Complaint.(Id, at 7-8). In the alternative, Silva argues that the Complaint fails to allege sufficient facts to state a Bane Act claim. (Id, at 8-9).

Preliminarily, when a Pro se Plaintiff's Complaint is being liberally construed, a Court must generally consider the substance of the Complaint's factual allegations when evaluating the sufficiency of the party's claims, and it should provide the individual with leeway when encountering technical imperfections in the pleading. This is presumably what the Ninth Circuit envisioned when directing lower courts to afford such a party "the benefit of any doubt[.]" Hebbe, 627 F.3d at 342.

Contrary to the Defendants' assertions; such liberal construction is exactly what the Court has done herein, when finding that Decedent had plead a viable Bane Act claim against Silva.(See ECF No. 15, at 2-5, 6-7). Overlooking the errors of form in favor of the substance of the facts alleged, the Court properly found that the Complaint's allegations provided every essential element necessary for Decedent to proceed with a Bane Act claim against Silva.

Turning to the substance of those allegations, Silva also errs in his assessment of the sufficiency of such facts. As Defendants correctly point out, a Bane Act claim has two essential elements: "(1) intentional interference or

6

attempted interference with a state or federal constitutional or legal right,
and (2) the interference or attempted interference was by threats, intimidation
or coercion." Allen v. City of Sacramento, 234 Cal.App.4th 41, 67(2015).

In his effort to have this claim dismissed, Silva points to the verbiage of
California's Civil Code that, at first glance, could be construed as a bar on
the prosecution of a Bane Act claim which is based solely on a Defendant's
speech, where the speech in question does not include an explicit threat of
violence. See Cal. Civil Code §52.1(k). However, the analysis does not end
there, as Silva would have it. Instead, when evaluating a Bane Act claim, the
Court must take into consideration all of the circumstances, as a whole, which
give rise to the claim.

With the entire picture in mind, the Court must evaluate the offending
conduct and "consider whether a reasonable person, standing in the shoes of the
plaintiff, would have been intimidated by the actions of the defendants and
[would] have perceived a threat of violence." Muhammad v. Garrett, 66 F.Supp.3d
1287, 1296 (E.D. Cal. 2014).

Although Silva would prefer the Court to look no further than his threats
against Decedent, this would provide an incomplete analysis. One must consider
all of the circumstances that Decedent faced when Silva threatened him, as well
as the unfolding of events which led up to that situation.

Returning to the evening of December 1, 2016, prior to being physically
dragged into the program office on his facility, Decedent had just been
brutally beaten by Defendant Hicks, and he had multiple, visable injuries to his
face and body.(See ECF No. 1, at ¶14-18). Moreover, it must be repeated that
such injuries were inflicted upon Decedent solely in response to his efforts
to grieve the fact that staff had improperly refused to provide him with his
prescribed medications.(Id, at ¶12-14).

1    Injured and in pain, Decedent was kept in damaging arm and leg restraints
2    for an extended period of time following this attack, while he was confined in
3    a small cage.(Id., at ¶18-19). From the surrounding circumstances, one can infer
4    that Defendant Silva was aware of the fact that Decedent had complained and
5    requested to speak with a Sergeant, because almost immediately after medical
6    staff concluded their examination of Decedent, Silva threatened him with
7    fraudulent disciplinary charges and ASU placement, if he didn't agree to refrain
8    from complaining in any way about being attacked by Hicks.(Id, at ¶19).

9        Silva issued this threat while accompanied by none other than Hicks,
10   confronting Decedent while he was alone, injured, and suffering. So, Decedent
11   was being threatened with illegal harm, and the only other person present was
12   his abuser. Looking at these factors together, along with the actual threat
13   issued by Silva, it is not difficult to draw the conclusion that a reasonable
14   person, in the same situation faced by Decedent, would "have perceived a threat
15   of violence."Muhammad, 66 F.Supp.3d at 1296.

16       Given Hicks' presence when Silva threatened Decedent, which any normal
17   individual would perceive as condoning the use of violence against them for
18   exercising their right to complain about staff behavior, a reasonable person
19   in Decedent's shoes would believe that they were at risk of imminent harm if
20   they refused to agree not to report Hicks' actions. As such, the Court should
21   reject Silva's challenge to this claim, because sufficient facts have been
22   plead to state a valid Bane Act claim against him.

23       III. Plaintiffs' Factual Allegations are Sufficient to State
           a First Amendment Retaliation Claim Against Silva
24
25       The final contention raised by Defendant Silva is that there are
26   insufficient facts alleged in Plaintiffs' Complaint for them to maintain a claim
27   against Silva under the First Amendment, for his retaliatory actions against
28   Decedent.(See ECF No. 31-1, at 9-10).

1	　　The Ninth Circuit has devised a five factor test for claims alleging
2	retaliation "in the prison context: (1) An assertion that a state actor took
3	some adverse action against an inmate (2) because of (3) that prisoner's
4	protected conduct, and that such action (4) chilled the inmate's exercise of
5	his First Amendment rights, and (5) the action did not reasonably advance a
6	legitimate correctional goal." **Brodheim v. Cry**, 584 F.3d 1262, 1269(9th Cir.
7	2009)(quoting **Rhodes v. Robinson**, 408 F.3d 559, 567–568(9th Cir. 2005)).

8	　　Defendant Silva contests this claim primarily based on the contention that
9	Plaintiffs' factual allegations are insufficient to establish that his actions
10	toward Decedent were motivated by a retaliatory intent. (See ECF No. 31–1, at
11	10). Now, as Silva correctly acknowledges, "direct evidence of retaliatory
12	intent rarely can be pleaded in a complaint[.]" **Watison**, 668 F.3d at 1114. (See
13	ECF No. 31–1, at 10). This well recognized principle is why Courts have
14	universally found that "a chronology of events from which retaliation can be
15	inferred is sufficient to survive dismissal." **Id.**; see also **Pratt v. Rowland**,
16	65 F.3d 802, 808(9th Cir. 1995)("timing can properly be considered as
17	circumstantial evidence of retaliatory intent"); **Muhammad v. Close**, 379 F.3d
18	413, 417–418(6th Cir. 2004)("temporal proximity alone may be significant enough
19	to constitute indirect evidence of a causal connection so as to create an
20	inference of retaliatory motive.").

21	　　Mimicking in large part his position on the Bane Act claim proceeding
22	against him, Silva seeks to limit this Court's focus on the threats he made
23	toward Decedent, while trying to ignore or gloss over the chronology of events
24	which led up to that event. Plaintiffs do not deny that their allegations must
25	amount to more than mere "[t]hreadbare recitals of the elements of a cause of
26	action," they are also cognizant that detailed factual allegations are not
27	required. **Ashcroft v. Iqbal**, 556 U.S. 662, 678 (2009).

28

9

1    Silva seems to believe that Plaintiffs must win their case exclusively
2  through the factual allegations set forth in their Complaint; however, their
3  true burden is much simpler, because pleading standards in federal court only
4  require a party to put forth "a short and plain statement of the claim showing
5  that the pleader is entitled to relief[.]" FRCP 8(a)(2).

6    Looking at the chronology of events articulated within Plaintiffs' Complaint,
7  there is sufficient detail to infer that Silva's threats against Decedent were
8  motivated solely by a retaliatory intent. The entire episode giving rise to this
9  action manifested specifically in response to Decedent's act of complaining
10 about staff's refusal to issue him his prescribed medications.(ECF No. 1, at
11 ¶12-14).

12   Decedent was beaten in response to said complaint, and then, after remaining
13 confined to a holding cage for nearly two hours following this attack, he was
14 confronted by both Silva and Hicks, in a situation from which Decedent had no
15 avenue of escape. And while seeming to laugh and joke with Hicks, Silva issues
16 the offending threat against Decedent.(Id, at ¶19).

17   Beyond Silva's threat itself, there is the actual substance of that threat,
18 in which he states:

19         Ok, you can either call this squashed, go back to your cell, and
           this is all over without you pushing any claims that staff
20         assaulted you. Or, I can write you up for battery on a peace
           officer, send you to the hole, and we can hash all of this out
21         in hearings and appeals.

22 (Id).

23   Coupling Silva's threats, in which he twice refers to Decedent potentially
24 "pushing claims" and filing "appeals" about being beaten by Hicks, along with
25 the timing of events, beginning with Decedent's complaints and request to speak
26 with a Sergeant, and ending with Silva's threats, the Court can draw several
27 reasonable inferences about Silva's knowledge and intent.

28

Because Silva was the on-duty Lieutenant on the evening of December 1, 2016, CDCR policies required that Hicks provide Silva with a detailed account of what took place between him and Decedent. Then, given Hicks' presence when Silva threatened Decedent, just a few hours after the incident in question, one can infer that Silva had debriefed Hicks prior to their joint confrontation of Decedent. Following this line of reasoning, a rational conclusion can be made that Silva was aware of the following: (1) the incident was triggered by Decedent's complaints; (2) no battery on an officer had occurred; and (3) Decedent had been injured by Hicks.

Because Decedent's complaints were the impetus for Hicks' violent attack, a further inference can be made that Silva sought to prevent additional complaints from Decedent, given his awareness that Decedent would complain about staff's misbehavior. Such an inference leads unerringly to Silva being motivated to issue his threatening ultimatum. As such, Decedent's earlier complaints acted as the primary catalyst prompting Silva to preemptively suppress any further grievances from Decedent.

Despite Silva's arguments to the contrary, it is well established that "the mere threat of harm can be an adverse action, regardless of whether it is carried out[,] because the threat itself can have a chilling effect. ... The power of a threat lies not in any negative actions eventually taken, but in the apprehension it creates in the recipient of the threat." **Brodheim**, 584 F.3d at 1270-1271. It is difficult to conceive of a threat that is more overtly malicious and retaliatory than that issued by Silva on December 1, 2016.

In light of the properly plead facts set forth in Plaintiffs' complaint, and all reasonable inferences that may be drawn from the chronology of events described therein, Plaintiffs' allegations are sufficient to state a valid First Amendment retaliation claim against Silva.

11

## CONCLUSION

The burden that must be met to prevail on a Motion to Dismiss is high, and Defendants have failed to meet that threshold in the case at bar. Through a lack of due diligence, they have brought a baseless challenge to Plaintiffs' state law claims[1], and they seek to dispose of other claims without just cause. Based upon the foregoing facts and arguments, attached exhibits, and all matters of record deemed relevant by this Court, Plaintiffs respectfully request that Defendants' Motion to Dismiss be denied, in full, with prejudice.

Respectfully submitted,

DATED: October          , 2020

Michael Madden
Plaintiff in Pro se

DATED: October          , 2020

Kathleen Madden
Plaintiff in Pro se

---

1. Pursuant to FRCP 11(b)(3), Defendants and their counsel had a duty to exercise due diligence, through a reasonable investigation, prior to presenting their motion to dismiss to this court. Given the evidence presented by Plaintiffs, Defendants obviously failed to meet this obligation.



**DECLARATION OF KATHLEEN MADDEN**

I, Kathleen Madden, hereby declare under penalty of perjury the following:

1. I am one of the plaintiffs in the instant action, prosecuting this matter as one of the successors-in-interest on behalf of my son, Ryan P. Madden (hereafter "Ryan"), who was a state prisoner when he first filed this case in 2018, but who passed away while still incarcerated in 2019. This declaration is being presented in support of the Opposition to Defendants' currently pending Motion to Dismiss, filed in this matter on July 15, 2020.

2. On December 30, 2016, I personally mailed, by certified mail, Inmate Appeal Log# CSP-COR-3-17-00137 to the Inmate Appeals Office at the California State Prison-Corcoran ("COR") on my son Ryan's behalf.(See attached **Exhibit 2**, at 17-18; **Ex. 3**, at 20 ), along with a letter from my husband Michael Madden (**Ex. 2**, at 18), who is also a Plaintiff in this action. Appeal Log# CSP-COR-3-17-00137 concerned the events which are at issue in this case.

3. From December 29, 2016, until at least October 30, 2017, Ryan was trying to exhaust Appeal Log# CSP-COR-3-17-00137 through the CDCR's administrative grievance system. (See **Ex. 3**, at 19-26; **Ex. 4**, at 27-28; **Ex. 5**, at 29-31; **Ex. 6**, at 32-34).

4. After Ryan passed away, prison officials provided me with all of the property that had been in his possession at the time of his death. In addition, I requested and received records from CDCR officials, which were supposed to constitute Ryan's entire prison central file ("C-File"). These materials were sent to me by Correctional Counselor II ("CC-II") Daniel Sanchez, from the California State Prison-Los Angeles County("LAC") in 2019, which is where Ryan was housed when he died. (**Ex. 7**, at 35-37).

5. Unfortunately, it seems that numerous documents were not included in the records that CC-II Sanchez sent to me last year, which I wasn't aware of until after I received Defendants' Motion to Dismiss on July 23, 2020.

1    6. For over two months following my receipt of Defendants' motion, I have
2 been attempting to make contact with someone from the CDCR's Office of Appeals
3 in Sacramento, California, in an effort to obtain all of the inmate appeal
4 records that were not included in Ryan's C-File. Despite leaving countless
5 messages, for numerous staff members, no one from the CDCR has responded to my
6 inquiries.

7    7. As such, on September 25, 2020, I sent an email to CC-II Sanchez at LAC,
8 asking him to provide me with this missing documentation.(**Ex.** 8, at 39 ). That
9 same day, I also sent a letter to CDCR Secretary Ralph Diaz, seeking the same
10 appeals records that should have been in Ryan's C-File.(**Ex.** 9, at 42). To date,
11 I have not received any response to any of my requests from any CDCR staff
12 member.

13    I declare under penalty of perjury under the laws of the United States of
14 America that the foregoing is true and correct.

15    Executed on this       day of October, 2020, at Calabasas, California.

16

17

18

19

20

21

22

23

24

25

26

27

28

Kathleen. Madden
5956 Ruthwood Drive
Calabasas, CA 91302

15




16

```
=====================================
        AGOURA HILLS
      5158 CLARETON DR
        AGOURA HILLS
            CA
         91301-9998
        0500480101
12/30/2016    (800)275-8777  4:50 PM
=====================================
=====================================
Product            Sale        Final
Description         Qty        Price

PM 2-Day            1          $6.45
   (Domestic)
   (CORCORAN, CA 93212)
   (Weight:0 Lb 3.30 Oz)
   (Expected Delivery Day)
   (Wednesday 01/04/2017)
   (USPS Tracking #)
   (9505 5156 3722 6365 0641 61)
 Insurance          1          $0.00
   (Up to $50.00 included)
First-Class         1          $0.47
Mail
Letter
   (Domestic)
   (CORCORAN, CA 93212)
   (Weight:0 Lb 0.80 Oz)
   (Expected Delivery Day)
   (Tuesday 01/03/2017)
 Certified          1          $3.30
   (@@USPS Certified Mail #)
   (70162710000084017974)
First-Class         1          $0.68
Mail
Letter
   (Domestic)
   (BAKERSFIELD, CA 93311)
   (Weight:0 Lb 1.20 Oz)
   (Expected Delivery Day)
   (Tuesday 01/03/2017)
 Certified          1          $3.30
   (@@USPS Certified Mail #)
   (70162710000084017998)
```
usps.com or ... For other
labels with postage. For other
information call 1-800-ASK-USPS.

*****************************************
Get your mail when and where you want
it with a secure Post Office Box. Sign

---

**U.S. Postal Service**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®

OFFICIAL USE

| Certified Mail Fee $3.30 | | 0101 |
| $ $0.00 | | 05 |
| Extra Services & Fees (check box, add fee as appropriate) | | |
| ☐ Return Receipt (hardcopy) $ $0.00 | | |
| ☐ Return Receipt (electronic) $ $0.00 | Postmark |
| ☐ Certified Mail Restricted Delivery $ $0.00 | Here |
| ☐ Adult Signature Required $ $0.00 | |
| ☐ Adult Signature Restricted Delivery $ | |
| Postage $0.68 | |
| $ | |
| Total Postage and Fees $3.98 | 12/30/2016 |
| $ | |

Sent To _OFFICE OF INSPECTOR GENERAL_
Street and Apt. No., or PO Box No. _9100 YOUNG ST, BLDG A, #100_
City, State, ZIP+4® _BAKERSFIELD, CA 93311_
PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

---

**U.S. Postal Service**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®

OFFICIAL USE

| Certified Mail Fee $3.30 | | 0101 |
| $ $0.00 | | 05 |
| Extra Services & Fees (check box, add fee as appropriate) | | |
| ☐ Return Receipt (hardcopy) $ | | |
| ☐ Return Receipt (electronic) $ $0.00 | Postmark |
| ☐ Certified Mail Restricted Delivery $ $0.00 | Here |
| ☐ Adult Signature Required $ $0.00 | |
| ☐ Adult Signature Restricted Delivery $ | |
| Postage $0.68 | |
| $ | |
| Total Postage and Fees $3.98 | 12/30/2016 |
| $ | |

Sent To _OFFICE OF INTERNAL AFFAIRS_
Street and Apt. No., or PO Box No. _9100 YOUNG ST BLDG B, # 160A_
City, State, ZIP+4® _BAKERSFIELD, CA 93311_
PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

---

**U.S. Postal Service**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®

OFFICIAL USE

| Certified Mail Fee $3.30 | | 0101 |
| $ $0.00 | | 05 |
| Extra Services & Fees (check box, add fee as appropriate) | | |
| ☐ Return Receipt (hardcopy) $ $0.00 | | |
| ☐ Return Receipt (electronic) $ $0.00 | Postmark |
| ☐ Certified Mail Restricted Delivery $ $0.00 | Here |
| ☐ Adult Signature Required $ $0.00 | |
| ☐ Adult Signature Restricted Delivery $ | |
| Postage $0.47 | |
| $ | |
| Total Postage and Fees $3.77 | 12/30/2016 |
| $ | |

Sent To _INMATE APPEALS OFFICE CSP COR_
Street and Apt. No., or PO Box No. _4001 KING AVE_
City, State, ZIP+4® _CORCORAN, CA 93212_
PS Form 3800, April 2015   See Reverse for Instructions

Michael Madden
27034 Helmond Drive
Calabasas, Ca 91301

December 29, 2016

Inmate Appeals Office
CSP-COR
4001 King Avenue
Corcoran, CA 93212

RE: Submission of Appeal via Certified Mail

Dear Appeals Coordinator,

Please find enclosed a staff complaint prepared by my son in relation to an incident in which he was beaten by a correctional officer named D. Hicks. My son, Ryan Madden, CDCR# F-62530, has completed this grievance in full.

Ryan asked me to submit this grievance to your office via certified mail to ensure that there is proof of its submission, which I am doing at this time. Because he was seriously injured by C/O Hicks, and has been threatened and placed in AD SEG, he was concerned that this grievance would disappear if he submitted it to your office via institutional mail.

I have retained a copy of the grievance, and I am contacting the CDCR Office of Internal Affairs and the Office of the Inspector General to bring this incident to their attention. Please ensure that my son's grievance is processed appropriately.

Sincerely,

Michael Madden

EXHIBIT 3




C-FILE COPY

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

IAB USE ONLY  Institution/Parole Region:  Log #:  Category:

FOR STAFF USE ONLY

You may appeal any California Department of Corrections and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your welfare and for which there is no other prescribed method of departmental review/remedy available. See California Code of Regulations (CCR), Title 15, Section 3084.1. You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that led to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process. No reprisals will be taken for using the appeal process.

Appeal is subject to rejection if one row of text per line is exceeded.                    **WRITE, PRINT, or TYPE CLEARLY** in black or blue ink.

Name (Last, First): Madden, Ryan    CDC Number: F-62530    3A04-226

State briefly the subject of your appeal (Example: damaged TV, job removal, etc.): Staff Complaint

A. Explain your issue (If you need more space, use Section A of the CDCR 602-A): No 12-27-16 at 1815 Nurse use's unnecessary/excessive force against me causing great bodily injury thursday I was in the pill line for evening meds when the nurse said there were no meds for me. I told her that I get evening meds everyday and asked her to double check. She became hostile

B. Action requested (If you need more space, use Section B of the CDCR 602-A): ① For an internal affairs investigation to be conducted into Hicks and the Lt's actions, which constitute the tort of intentional infliction of injury, unnecessary/excessive force and deliberate indifference in violation of my 8th Amend right to be free from

Supporting Documents: Refer to CCR 3084.3.

☐ Yes, I have attached supporting documents.

List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory; CDC 128-G, Classification Chrono):

_____     _____     _____

_____     _____     _____

☒ No, I have not attached any supporting documents. Reason: None exist.

Inmate/Parolee Signature: Ryan Madden    Date Submitted: 12-29-16

☐ By placing my initials in this box, I waive my right to receive an interview.

---

C. First Level - Staff Use Only

This appeal has been:

☑ Bypassed at the First Level of Review. Go to Section E.
☐ Rejected (See attached letter for instruction) Date:_____ Date:_____ Date:_____
☐ Cancelled (See attached letter) Date:_____
☐ Accepted at the First Level of Review.

Assigned to:_____ Title:_____ Date Assigned:_____ Date Due:_____

First Level Responder: Complete a First Level response. Include interviewer's name, title, interview date, location, and complete the section below.

Date of Interview:_____ Interview Location:_____

Your appeal issue is: ☐ Granted  ☐ Granted in Part  ☐ Denied  ☐ Other:_____

See attached letter. If dissatisfied with First Level response, complete Section D.

Interviewer:_____ Title:_____ Signature:_____ Date completed:_____
        (Print Name)

Reviewer:_____ Title:_____ Signature:_____
        (Print Name)

Date received by AC:_____

AC Use Only
Date mailed/delivered to appellant ___/___/___

20

USE AS ORIGINAL

USE AS ORIGINAL

STATE OF CALIFORNIA
INMATE/PAROLEE APPEAL FORM ATTACHMENT
CDCR 602-A (08/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

IAB USE ONLY | Institution/Parole Region: | Log #: |

FOR STAFF USE ONLY

Attach this form to the CDCR 602, only if more space is needed. Only one CDCR 602-A may be used.
Appeal is subject to rejection if one row of text per line is exceeded.        WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
| Madden Ryan | F-62530 | 3A01-226 | |

A. Continuation of CDCR 602, Section A only (Explain your issue): saying you're not getting anything and
calling Sgt. Hicks even. I was explaining my need for my meds when Hicks walked up and I
asked to speak with his supervisor (Sgt or Lt) in the hopes of getting help with medical staff.
Hicks said "okay, cuff up." I immediately complied with Hicks order and he placed me in
handcuffs. Hicks then grabbed me and slammed me into the ground face first followed by him
kneeing me in the head with his knee pressing all of his body weight on my head. He
dragged my face against the concrete, resulting in significant lacerations and bruising.
I was then placed in a cage, where the Lt. (name unknown) told me to accept what happened
and let the issue die, or things would go very bad for me. Out of fear, I agreed not to
report Hicks. However, on or about 12-3-16 members of the IAC, who had witnessed Hicks beat
me, reported the incident. Although I've NEVER been involved in a sex offense, after the
beating was reported, Hicks and/or the Lt. who threatened me forged some document to
make it look like I was a sex offender. On 12-4-16 from my cell I saw numerous inmates in a
corner of the dayroom scanning a document, then many of them came to my cell calling
me a "rapist" and "child molester". This was an obvious attempt to goad other inmates into
assaulting me, and Hicks and/or the Lt. were the only staff with the motive and capability of
falsifying such a record. As a result of this 12-4-16 as a result of the TAP report, a (unfreadable) interview
was conducted with me, and I was placed in AD SEG pending investigation. My life
is in danger as long as I'm housed where Sgt Hicks works.

Inmate/Parolee Signature: Ryan Madden        Date Submitted: 12-29-16

B. Continuation of CDCR 602, Section B only (Action requested): cruel and unusual punishment; (1) Sgt. Hicks and the
Lt. who threatened me to have adverse personnel action taken against them, up to and including the termination
of their employment with the CDCR; (2) For this staff complaint to be placed in the personnel files of all Hicks
and the Lt. for a period of at least five years; (4) For monetary damages as compensation for illegal
actions taken against me by Sgt Hicks and the Lt.; and (3) For all CDCR staff to refrain from subjecting
me to additional unwarranted AD SEG placement, false disciplinary charges, any form of further excessive
or unnecessary force, or any other form of retaliation for filing the instant grievance or any other
reason.

Inmate/Parolee Signature: Ryan Madden        Date Submitted: 12-29-16

USE AS ORIGINAL 21

 

STATE OF CALIFORNIA **USE AS ~~ORIGINAL~~** DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE/PAROLEE APPEAL
CDCR 602 (REV. 03/12) Side 2

**D. If you are dissatisfied with the First Level response, explain the reason below, attach supporting documents and submit to the Appeals Coordinator for processing within 30 calendar days of receipt of response. If you need more space, use Section D of the CDCR 602-A.**

*BYPASS* *BYPASS* *BYPASS*

Inmate/Parolee Signature: _____ Date Submitted : _____

**E. Second Level – Staff Use Only** Staff – Check One: Is CDCR 602-A Attached? ☒ Yes ☐ No

This appeal has been:

☐ By-passed at Second Level of Review. Go to Section G.
☐ Rejected (See attached letter for instruction) Date: _____ Date: _____ Date: _____ Date: _____
☒ Cancelled (See attached letter) 1/9/17
☒ Accepted at the Second Level of Review MAY 17 2017 4/29/17

Assigned to: **AWDP** Title: _____ Date Assigned: _____ Date Due: _____

Second Level Responder: Complete a Second Level response. If an interview at the Second Level is necessary, include interviewer's name and title, interview date and location, and complete the section below.

Date of Interview: Original w 2/9/17 Interview Location: TELEPHONE

Your appeal issue is: ☐ Granted ☒ Granted In Part ☐ Denied ☐ Other: _____

See attached letter. If dissatisfied with Second Level response, complete Section F below.

Interviewer: iCu oubi Title: iq Signature: _____ Date completed : 6/1/17
Reviewer: _____ (Print Name) Title: CDWA Signature: _____

Date received by AC: _____

AC Use Only
Date mailed/delivered to appellant 6/21/17

**F. If you are dissatisfied with the Second Level response, explain reason below, attach supporting documents and submit by mail for Third Level Review. It must be received within 30 calendar days of receipt of prior response. Mail to: Chief, Inmate Appeals Branch, Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, CA 94283-0001. If you need more space, use Section F of the CDCR 602-A.**

Inmate/Parolee Signature: _____ Date Submitted: _____

**G. Third Level – Staff Use Only**

This appeal has been:
☐ Rejected (See attached letter for instruction) Date: _____ Date: _____ Date: _____ Date: _____ Date: _____
☐ Cancelled (See attached letter) Date: _____
☐ Accepted at the Third Level of Review. Your appeal issue is ☐ Granted ☐ Granted in Part ☐ Denied ☐ Other: _____
See attached Third Level response.

Third Level Use Only
Date mailed/delivered to appellant ____/____/____

**H. Request to Withdraw Appeal: I request that this appeal be withdrawn from further review because: State reason. (If withdrawal is conditional, list conditions.)**

Inmate/Parolee Signature: _____ Date: _____
Print Staff Name: _____ Title: _____ Signature: _____ Date: _____

22

**USE AS ORIGINAL**

# Memorandum

Date : June 1, 2017

To :   Madden F62530
       C005-223U
       CSP-Lancaster

Subject: **STAFF COMPLAINT RESPONSE - APPEAL # CSPC-3-17-00137** *SECOND* **LEVEL RESPONSE**

**APPEAL ISSUE:** You allege on December 02, 2016, after being informed you did not have any medications prescribed to you; you asked to speak to a supervisor. You claim Officer Hicks handcuffed you and suddenly slammed you face down on the pavement, dragging your face across the pavement causing severe injuries (lacerations). You also allege Officer Hicks and the Lieutenant (E. Silva) fabricated a fake chrono stating you were a child molester and handed it out to the inmate population. This caused you to have safety concerns on the facility, resulting in you being moved to Facility 3C.

**DETERMINATION OF ISSUE:** A review of the allegations of staff misconduct presented in the written complaint has been completed. Based upon this review your appeal is being processed as an Appeal Inquiry.

You were telephonically interviewed on February 19, 2017, by Lieutenant K.A. Dicks and you stated you had nothing to add that wasn't already in the 602.

### Your appeal is PARTIALLY GRANTED in that:

> ➢ The **Appeal Inquiry** is complete/ has been reviewed and all issues were adequately addressed.

The following witnesses were questioned: Correctional Officers R. Billings and I. Medina. Inmates Youngblood H60800 and Lovato H02221.

The following information was reviewed as a result of your allegations of staff misconduct: CDCR 837 Crime Incident Package Log # COR-03B-12-16-0757, all 837C's included in Crime Incident package, CDCR 7219 Medical Report of Injury, CDCR 3013 and 3014 interviews completed December 05, 2016.

Staff: *did* ☐ *did not* ☒ violate CDCR policy with respect to one or more of the issues appealed.

ALL STAFF PERSONNEL MATTERS ARE CONFIDENTIAL IN NATURE.

- As such, the details of any inquiry will not be shared with staff, members of the public, or offender appellants.

- Although you have the right to submit a staff complaint, a request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process. A variety of personnel actions may be initiated by the Department based upon the content of your complaint and the outcome of any investigation or inquiry conducted as a result of your complaint.
- Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process.

If you wish to appeal the decision and/or exhaust administrative remedies, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Secretary's/Third Level of Review. Once a decision has been rendered at the Third Level, administrative remedies will be considered exhausted.

Print: K.A. DICKS          Sign: _____          Date: 06/01/17
Interviewer

Print: _____     Sign: _____          Date: 6/15/17
Reviewing Authority



USE AS ORIGINAL

STATE OF CALIFORNIA
RIGHTS AND RESPONSIBILITY STATEMENT
CDCR 1858 (Rev. 10/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

# RIGHTS AND RESPONSIBILITY STATEMENT

*The California Department of Corrections and Rehabilitation has added departmental language (shown inside brackets, in non-boldface type) for clarification purposes.*

*Pursuant to Penal Code 148.6, anyone wishing to file an allegation of misconduct by a departmental peace officer must read, sign and submit the following statement:*

YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER [this includes a departmental peace officer] FOR ANY IMPROPER POLICE [or peace] OFFICER CONDUCT. CALIFORNIA LAW REQUIRES THIS AGENCY TO HAVE A PROCEDURE TO INVESTIGATE CITIZENS' [or inmates'/parolees'] COMPLAINTS. YOU HAVE A RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE. THIS AGENCY MAY FIND AFTER INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY. CITIZEN [or inmate/parolee] COMPLAINTS AND ANY REPORTS OR FINDINGS RELATING TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS.

| COMPLAINANT'S PRINTED NAME | COMPLAINANT'S SIGNATURE | DATE SIGNED | |
|---|---|---|---|
| INMATE/PAROLEE PRINTED NAME  Ryan Madden | INMATE/PAROLEE'S SIGNATURE | CDC NUMBER  F-62530 | DATE SIGNED  12-28-16 |
| RECEIVING STAFF'S PRINTED NAME | RECEIVING STAFF'S SIGNATURE | DATE SIGNED | |

DISTRIBUTION:
ORIGINAL –
Public – Institution Head/Parole Administrator
Inmate/Parolee – Attach to CDC form 602
Employee – Institution Head/Parole Administrator
COPY – Complainant

## EFFECTIVE COMMUNICATION DETERMINATION FOR FORMAL LEVEL
## CDC 602 INMATE/PAROLEE APPEAL

Inmate _MADDEN_ CDC# _F62530_ Appeal Log# _SAC-3-17-00137_

☒ Test of Adult Basic Education (TABE) <u>above</u> 4.0 (provide RGPL _12.9_ / verify source if other than RGPL_____)

☐ Test of Adult Basic Education (TABE) <u>below</u> 4.0 (provide RGPL_____)

☐ Learning Disability (LD)

☐ Non-English speaking

<u>* All first level responses must indicate whether inmate does or does not require effective communication. If RGPL is 4.0 or below, first level responder must also identify how Effective Communication was established within response.</u>

_____      _____      _____
Staff Signature                        Title   LT          Date  5/21/17

_____
Print Name  Ka Dudes

## PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE



27

State of California
CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the SECOND Level

*Wednesday, April 19, 2017*

*MADDEN, F62530*
C  005 2223001U

LEGAL, , 04/19/2017
Log Number: CSPC-4-17-01386
(Note: Log numbers are assigned to all appeals for tracking purposes. Your appeal is
subject to cancellation for failure to correct noted deficiencies.)

The enclosed documents are being returned to you for the following reasons:

*RO  Other*

*Your appeal is dated 03/01/2017. You will be allowed to resubmit your original appeal Log#
17-137 only after you have removed appeal Log# 17-1386. You must attach this CDCR 695 to
your original appeal as proof you were allowed to resubmit.*

☐  M. Oliveira, CCII Appeals Coordinator
☐  M. Ledezma, AGPA
☑  D. Goree Jr, CCII
Appeals Coordinator
Corcoran State Prison

FORWARD TO LAC

I am now in L.A.c { C-5 cell 2234

4-27-17

NOTE: If you are required to respond/explain to this CDCR Form 695, use only the lines provided below.
I've been instructed to attach this 695 to my original appeal, however, part of
the original problem was that I NEVER received the original copy of my original
appeal back. I only learned it had been cancelled through a response letter the
Warden sent my father regarding his inquiry. This is a copy of the original appeal that I obtained
Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and from my
resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b). Pursuant to counselor
CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a at Corcoran
separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if
the appeal on the cancellation is granted.
NOTE THIS CDCR 695 IS A PERMANENT APPEAL ATTACHMENT AND IS NOT TO BE REMOVED

28



29

TÜ 1707293

STATE OF CALIFORNIA
INMATE/PAROLEE REQUEST FOR INTERVIEW, ITEM OR SERVICE
CDCR 22 (10/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

LAC

## SECTION A: INMATE/PAROLEE REQUEST

| NAME (PRINT) (LAST NAME) | (FIRST NAME) | CDC NUMBER: | SIGNATURE: |
|---|---|---|---|
| Madden | Ryan | F62530 | Ryan Madden |

| HOUSING/BED NUMBER: | ASSIGNMENT: | HOURS FROM ___ TO ___ | TOPIC (I.E. MAIL, CONDITION OF CONFINEMENT/PAROLE, ETC.): |
|---|---|---|---|
| C-5 223 | | | Staff Complaint 3rd level |

CLEARLY STATE THE SERVICE OR ITEM REQUESTED OR REASON FOR INTERVIEW:

This is to document that I am mailing my staff complaint
log #17-00137 to Sacramento for 3rd level review.
The date is July, 17, 2017. Please return to me when
received as 3rd level review. Thank you.

METHOD OF DELIVERY (CHECK APPROPRIATE BOX) **NO RECEIPT WILL BE PROVIDED IF REQUEST IS MAILED **
☑ SENT THROUGH MAIL: ADDRESSED TO: Appeals Coordinator          DATE MAILED: 7/17/17
☐ DELIVERED TO STAFF (STAFF TO COMPLETE BOX BELOW AND GIVE GOLDENROD COPY TO INMATE/PAROLEE)

| RECEIVED BY: PRINT STAFF NAME: | DATE: | SIGNATURE: | FORWARDED TO ANOTHER STAFF? |
|---|---|---|---|
| THIBART | 7-17-17 | | (CIRCLE ONE) YES / NO |

| IF FORWARDED – TO WHICH: | | DATE DELIVERED/MAILED: | METHOD OF DELIVERY: |
|---|---|---|---|
| | | | (CIRCLE ONE: IN PERSON / BY US MAIL |

## SECTION B: STAFF RESPONSE

| RESPONDING STAFF NAME: | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|
| M. Harder | 7/24/17 | M.H. | 7/25/17 |

## SECTION C: REQUEST FOR SUPERVISOR REVIEW
PROVIDE REASON WHY YOU DISAGREE WITH STAFF RESPONSE AND FORWARD TO RESPONDENT'S SUPERVISOR IN PERSON OR BY US MAIL. KEEP FINAL CANARY COPY.

| SIGNATURE: | | DATE SUBMITTED: | |
|---|---|---|---|
| | | | |

## SECTION D: SUPERVISOR'S REVIEW

| RECEIVED BY SUPERVISOR (NAME): | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|
| | | | |

Distribution: Original – Return to Inmate/Parolee; Canary – Inmate/Parolee's 2nd Copy; Pink – Staff Members Copy; Goldenrod – Inmate/Parolee's 1st Copy.

30

REC BY OOA

JUL 24 2017




32

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | *FOR STAFF USE ONLY* | | |

You may appeal any California Department of Corrections and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your welfare and for which there is no other prescribed method of departmental review/remedy available. See California Code of Regulations, Title 15, (CCR) Section 3084.1. You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that lead to the filing of this appeal. If additional space is needed, *only* one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process. No reprisals will be taken for using the appeal process.

Appeal is subject to rejection if one row of text per line is exceeded. **WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| Madden, Ryan | F62530 | C5 232 | E.O.P |

State briefly the subject of your appeal: (Example: damaged TV, job removal, etc.):

Appeal cancellation/denial by 3rd level Log # 17-00137

**A.** Explain your issue (If you need more space, use Section A of the CDCR 602-A):

I am appealing the cancellation of my staff complaint, Log # 17-00137, by 3rd level review dated Oct. 11, 2017. The original incident occurred on Dec. 2, 2017 at Corcoran State Prison. Corcoran appeals coordinators

**B.** Action requested (If you need more space, use Section B of the CDCR 602-A): That 3rd level allow me to re-submit my staff complaint Log # 17-00137 and address it on the merits, while also acknowledging their cancellation was erroneous due to the mailbox rule, IN Re (amirth and the fct this issue of timelines had already been appealed and won, as I was allowed to resubmit already ~~btw~~

**Supporting Documents:** Refer to CCR 3084.3.

☑ Yes, I have attached supporting documents.

List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory; CDC 128-G, Classification Chrono):

602-Log # 17-1386 (granting right to resubmit appeal) copies of dated certified mail receipts & tracking # 's
DC-695 related to 602-Log # 17-1386     original staff complaint - log # 17-00137 & cancellation letter

☐ No, I have not attached any supporting documents. Reason: _____

_____

_____

| Inmate/Parolee Signature: *Ryan Madden* | Date Submitted: 10/30/17 |
|---|---|

☐ By placing my initials in this box, I waive my right to receive an interview.

**C. First Level - Staff Use Only** Staff – Check One: Is CDCR 602-A Attached? ☐ Yes ☐ No

This appeal has been:

☑ Bypassed at the First Level of Review. Go to Section E.
☐ Rejected (See attached letter for instruction) Date: ___ Date: ___ Date: ___ Date: ___
☐ Cancelled (See attached letter) Date: ___
☐ Accepted at the First Level of Review.

Assigned to: ___ Title: ___ Date Assigned: ___ Date Due: ___

First Level Responder: Complete a First Level response. Include Interviewer's name, title, interview date, location, and complete the section below.

Date of Interview: ___ Interview Location: ___

Your appeal issue is: ☐ Granted ☐ Granted in Part ☐ Denied ☐ Other: ___

See attached letter. If dissatisfied with First Level response, complete Section D.

Interviewer: ___ (Print Name) Title: ___ Signature: ___ Date completed: ___

Reviewer: ___ (Print Name) Title: ___ Signature: ___

Date received by AC: ___

33

| AC Use Only |
|---|
| Date mailed/delivered to appellant ___ / ___ / ___ |

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | | | |

FOR STAFF USE ONLY

Attach this form to the CDCR 602, only if more space is needed. Only one CDCR 602-A may be used.
Appeal is subject to rejection if one row of text per line is exceeded.   WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| | | | |

A.  Continuation of CDCR 602, Section A only (Explain your issue) : _claim that they didn't receive_
_y staff complaint until Jan.5, 2017. As such, the 2nd level screening originally cancelled_
_the 602 on Jan.7, 2017, citing Title 15, Sec.(CCR) 3084.6(c)(4) stating that the Jan.5_
_reception date exceeded the 30 day time constraint. I appealed this cancellation and received a_
_ng #17-1386. In it I cited 15 CCR §3084.8(b)(1), that states an inmate has 30 days to SUBMIT an appeal._
_Further explained that because I believed Corcoran staff had thrown away my appeals due to me not_
_recivinig a Log#, I mailed the appeal to my mother and had her mail it in from the streets. I gave_
_ref that she had sent it certified mail, accompanied with a dated letter, on 12/30/2016. That date_
_falls within the 30 day time constraint, and due to the court case In re Lambirth, this issue has been_
_ecided (otherwise Known as the "mailbox rule"), that as long as an appeal has been submitted_
_.e. mailed) within 30 days, it is still timely. Since this appeal was noted to have been received via_
_ertified mail, and I provided proof it was done so within 30 days, my appeal (log#17-1386) of the first_
_uncellation was granted, the cancellation was deemed erroneous, and I was allowed to re-submit_
_y staff complaint with a log#17-00137. Now, 3rd level review is cancelling my appeal AGAIN, and_
_erroneously citing the same reasons 2nd level had, saying that the Jan.5 reception date is untimely._
_This issue of timliness has already been appealed -and GRANTED IN FULL. Once again, I am_
_ntending that because the 602 was mailed (i.e. submitted) on Dec.30, 2017, it is within 30 days_
_d is therefore timely. I have already appealed that issue and won, and 3rd level has cited no reason_
_w/ how the reviewer in 602 log#17-1386 misapplied the mailbox rule when granting it and allowing resubmission_
Inmate/Parolee Signature: [signature]          Date Submitted: 10/30/17

B.  Continuation of CDCR 602, Section B only (Action requested): _once before. Also, suggesting that 3rd level_
_reviewer/examiner T. Lee, Captain, may need to undergo further training after screening out_
_this appeal for erroneous reasons. The timliness of this appeal had already been appealed_
_and resolved in a 2nd level screening and subsequent appeal Log#17-1386, and with the_
_proper application of CDC policies, my original staff complaint was deemed timely and I was_
_allowed to resubmit. The fact he is not aware of this, or neglected to explain how their_
_application of the mailbox rule was erroneous, proves he needs further training and possible_
_reprimanding as well._

34

Inmate/Parolee Signature: _____   Date Submitted: _____



35

August 2, 2019

Dear Mr. Sanchez;

I am writing to request the following records pertaining to my son, Ryan P Madden, F62530, who passed away in your prison on March 31, 2019.

Please forward  all the contents from **Ryan's Central file (C File)**, including, but not limited to:

- The disciplinary portion of his file.
- All documentation pertaining to the incident the night of his discovery and death
- All prior classification,
- All documentation pertaining to his housing arrangement
- All documentation pertaining to cell checks on March 30 and 31 2019
- All documentation pertaining to medical assistance rendered on March 30 and 31, 2019
- All documentation pertaining to his loss of visitation from when the RVR occurred, and subsequent status of his appeal.
- All documentation pertaining to classification from his central file

Mr. Sanchez, we deeply appreciate all of your assistance rendered in providing requested documentation, along with the return of Ryan's personal goods, in a timely manner previous to this request. As we continue struggling to make sense of this unfathomable tragedy, I hope that we can continue to work in a spirit of mutual cooperation.

You can send the requested documentation to the following address:

Michael and Kathleen Madden
5956 Ruthwood Dr.,
Calabasas CA 91302
310-728-5940

Please don't hesitate to get in touch if you should have the need. You can reach me directly on my cell phone at the number listed above.

Sincerely

Michael Madden

August 26, 2019


Litigation Coordinator
California State Prison - Los Angeles County
44750 60th Street West
Lancaster, CA 93536


RE: Declaration for the estate of Ryan Madden F62530


I, Kathy Madden (Kathleen Anne Dillon Madden), am writing this letter as a request for the full
C-file (disciplinary file in it's entirety) of my son, Ryan Patrick Madden, CDCR number F62530,
who was born August 31, 1986 in Alexandria, VA. His social security number is 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.

As the next of kin and beneficiary of Mr. Ryan Madden's estate, pursuant to California's law of
intestate succession, I am making this declaration for his files knowing that no one is
contesting my entitlement to authorize their release to me.

This declaration is being signed under penalty of perjury this date _August 27, 2019_ in
the city of _Calabasas_, _California_

State of California
County of LOS ANGELES
Subscribed and sworn to (or affirmed) 
before me this 27 day of AUG, 20 19
by KATHLEEN MADDEN
proved to me on the basis of satisfactory evidence
to be the person(s) who appeared before me.
Signature _____

(Seal)

DAVID E. MCMANUS
Commission # 2135911
Notary Public - California
Los Angeles County
My Comm. Expires Dec 22, 2019



38

Print | Close Window

Subject: **Madden F62530 3rd Level of Appeal paperwork**
From: kathy@kathymadden.com
Date: Fri, Sep 25, 2020 11:48 am
To: "Daniel.Sanchez@cdcr.ca.gov" <Daniel.Sanchez@cdcr.ca.gov>
Cc: "kathy@kathymadden.com" <kathy@kathymadden.com>
Attach: Staff Complaint 3rd Level paperwork request.pdf

Hello Mr Sanchez,

This is a resend since I didn't hear back from you regarding this issue.

I am sending you this letter in the mail as well and can start the process of sending it to other offices of the CDCR if necessary in order to get some justice. We will exhaust all of our options since there is nothing more important than securing accountability and transparency from the authorities when they act illegally and unjustly towards a citizen in our communities (including the incarcerated citizens) .

I think you know by the tenor of our society, that this will not be taken lightly.

Sincerely,

Kathy Madden


*Dear Mr Sanchez,*

*I've compiled some documents to accompany my request for the 3rd Level of Appeal on my son, Ryan Patrick Madden's staff complaint (Log#CSPC-3-17-00137) from December of 2016. I am not able to find it in his C File.*
*The C File that I received is incomplete.*

*I did see that there is a box that the CDCR checked in my request for Ryan's C File that says "Non-confidential" records. That seems to exclude information. It seems that there is very little in his C File that could help us to prosecute an abuse case against the CDCR. However, the file does have any and all incriminating evidence that could implicate Ryan.*

*At this point, I have called the CDCR Office of Appeals and left at least 9 messages over the past 7 weeks with no response. I have called the Archives Unit in Rancho Cordova and spoken to someone there who told me that they don't have that info. I've called the Office of Legal Affairs and I am sure I could write a letter to them if necessary and cc it to the Ombudsman, the Los Angeles Times, the Office of the Inspector General....all of whom have heard from us regarding this case already. But I would rather receive a response from you.*

*The first copy in this attachment is a yellow copy of Ryan's CDCR22 from January 21, 2019. It requests a certified copy of the 3rd Level Appeal that he says, "got lost in my transfer." The second document is a copy of a CDCR22 from a year and a half earlier that staff named THIBAULT sent on July 17,2017 and was stamped "REC BY OOA, Jul 24, 2017. M Harder stated that the document was relative to COR-17-00137.*

*We know that Ryan exhausted all 3 levels of the Appeals process.*
*The Brady Rule requires "the defense to provide the names and statements of all witnesses it intends to*

*call at trial, other than the defendant, and disclose any physical evidence, expert reports or scientific tests it intends to present." I trust that you will willingly adhere to this long held legal principle.*

*We are making one final request for this to prosecute our case, and trust that you too are in favor of weeding out any and all employees who may be treating people inhumanely.*

*Thank you for your attention and cooperation in this matter.*

*Sincerely,*

*Kathy Madden*

Copyright © 2003-2020. All rights reserved.

40



September 25, 2020

RALPH M. DIAZ Secretary
Director/Secretary
California Department of Corrections and Rehabilitation
1515 S Street, Suite 502
P.O. Box 942883
Sacramento, CA 94283-0001

Dear Mr Diaz,

I am sending this letter to you in hopes that I can get results.

My son, Ryan Patrick Madden F62530, died while in custody March 31, 2019. He was housed at CSP Lancaster at that time. We (his father and myself) are fighting on his behalf to right a wrong that was committed against him in December of 2016 while he was at Corcoran State Prison.

Ryan filed all of the appeals and his case (#1:18-cv-00255-DAD-BAM) is now pending in the Eastern District of California. In litigating this case we have not been able to locate the official copy of his 3rd Level Appeal, which we know was timely filed and we know that his filings exhausted the requirement to proceed to the courts.

I've included some paperwork to aid you in assisting us with this, since I know that you are a good administrator and that you would take action if any of the state employees under your command were to misuse their authority.

I am asking for your help in getting a copy of the official (Original) 3rd Level Appeal processed paperwork for Ryan's case against CO Dennis Hicks.

Please know that it breaks my heart to even have to write this letter right now. I would hope that you can understand that and that you will do the right thing so that we can continue down this road to right a wrong. The people who are housed in your institutions will be on our streets again, in our society, and they should be treated as anyone else would be treated.

Sincerely,

Kathy Madden
5956 Ruthwood Dr
Calabasas, CA 91302

## PROOF OF SERVICE BY UNITED STATES MAIL

I, Kerri Madden, declare under penalty of perjury that the following statement
is true and correct:

I am over the age of 18 years old, and am a resident of the State of California
with a present mailing address of:   5956 Ruthwood Drive, Calabasas,
California 91302.

On this _____ day of October _____, 2020, I caused a true and correct copy of
the following, specifically described document:

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS; SUPPORTING EXHIBITS

to be placed in a sealed envelope, with First Class postage having been placed
thereon, in the United States Mail at Calabasas, California, addressed as follows:

            ATTN: Clerk of the Court
            United States District Court
            Eastern District of California
            2500 Tulare Street
            Room 1501
            Fresno, CA  93721

I declare under penalty of perjury under the laws of the United States of America
and the State of California the the foregoing is true and correct.

Executed on this ⟨30⟩ day of ___October___, 2020, at Calabasas, California.


            DECLARANT'S SIGNATURE