1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MADDEN, Successor-in-Interest to Ryan P. Madden, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> HICKS, *et al.*, <br><br> Defendants. | Case No.  1:18-cv-00255-ADA-BAM (PC) <br><br> FINDINGS AND RECOMMENDATION DENYING DEFENDANTS' MOTION TO DISMISS <br><br> (ECF No. 31) <br><br> **FOURTEEN (14) DAY DEADLINE** |

I.      **Introduction**

Plaintiffs Michael Madden and Kathleen ("Kathy") Madden, as Successors-in-Interest to Ryan P. Madden (collectively, "Plaintiffs") are proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983.  This action proceeds against Defendant Hicks for excessive force and assault and battery claims, and against Defendants Silva and Hicks for California Bane Act and retaliation claims.  Defendants Hicks and Silva filed a motion to dismiss. (ECF No. 31.)  Plaintiffs filed an opposition, and Defendants filed a reply.  (ECF Nos. 37, 47.) The motion to dismiss is deemed submitted. Local Rule 230(l).

II.      **Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court

must accept as true the allegations of the complaint in question, *Erickson v. Pardus*, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Meek v. Cty. of Riverside*, 183 F.3d 962, 965 (9th Cir. 1999).  In ruling on the motion, the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  The court may also consider documents incorporated by reference into the complaint.  *Van Buskirk v. Cable News Network, Inc*., 284 F.3d 977, 980 (9th Cir. 2002).

In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  The court has an obligation to construe such pleadings liberally.  *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, a court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pleaded.  *Ivey v. Bd. of Regents of Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir. 1982).  Also, the Court need not credit "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007).

### III.   **Defendants' Motion to Dismiss**

#### **A.  Brief Overview of the Case**

Plaintiffs Michael and Kathleen Madden are the successors-in-interest, to their son Ryan P. Madden's ("Madden") claims.  Madden passed away on March 31, 2019, and his parents were substituted in on Madden's behalf.

The action arises from force used on Madden while incarcerated at California State Prison, at Corcoran, California.  Madden alleges that Defendant Dennis Hicks used excessive force and engaged in retaliation against Madden.  Defendant Edward Silva threatened Madden with fraudulent disciplinary charges and placement in administrative segregation if Madden formally complained about the force used by Hicks.

///

///

2

1          **B.      Defendants' Arguments**

2          Defendants contend that Plaintiffs' state law claims are subject to dismissal for failure to

3   comply with the California Government Claims Act, (formerly the Victim Compensation and

4   Government Claims Board ("VCGCB")). Plaintiffs seek monetary damages against Lieutenant

5   Silva and Officer Hicks, who are public employees with the California Department of Corrections

6   and Rehabilitation ("CDCR"). Plaintiffs allege assault and battery and claims under the Bane

7   Act. Plaintiffs must comply with the Government Claims Act. The complaint alleges

8   compliance, but judicially noticeable facts show that Madden did not comply.

9          Madden did not file this lawsuit within six months after his government claim was

10  rejected. Madden filed the relevant government claim (GCP No. 17005837) on May 13, 2017,

11  and the VCGCB rejected his claim on June 29, 2017. He had until December 29, 2017 to file a

12  complaint regarding his state law claims. He did not constructively file until February 6, 2018.

13  The state law claims were not brought within six months as required by the Government Claims

14  Act, and his state law claims are time barred.

15         Next, Defendants argue that Plaintiffs fail to state a claim under the Bane Act against

16  Defendant Silva. Madden does not accuse Lieutenant Silva of violating the Bane Act. Madden

17  only accused Officer Hicks of violating California's Bane Act, not Lieutenant Silva. (ECF No. 1,

18  p. 15.) The Court should not have so liberally construed the complaint so as to supply essential

19  elements that were not pled. Plaintiff did not plead or seek a Bane Act claim against Defendant

20  Silva. Alternatively, the complaint fails to state a Bane Act claim against Defendant Silva. The

21  complaint does not allege that Lieutenant Silva used any force on Madden, was present when any

22  force was used, or ever threatened Madden with any violence. After Officer Hicks used force on

23  Madden, Defendant Silva gave Madden an ultimatum. But speech alone is not sufficient to state

24  a Bane Act claim because it does not contain any threat of violence. Madden only alleged he

25  feared "having false allegations, and potentially criminal charges, filed against him. . . ." (ECF

26  No. 1, p. 12.)

27         Plaintiffs fail to state a First Amendment retaliation claim against Lieutenant Silva. The

28  complaint does not allege Lieutenant Silva acted with the necessary retaliatory intent. There is no

1   chronology of events where retaliatory intent can be inferred.  The complaint does not allege that

2   Madden told Silva he was going to file a grievance and there are no allegations that Silva was the

3   person who had Madden placed in Ad-seg.  There is no allegation that Silva knew that Madden

4   had engaged in protected conduct.

5                    **C.     Plaintiffs' Arguments in Opposition**

6            Plaintiffs contend the claims are timely.  Plaintiffs argue that due to the lengthy period of

7   time spent exhausting administrative remedies, tolling renders all of the Plaintiffs' state law

8   claims timely.  Plaintiffs acknowledge that they must comply with the California Government

9   Claims Act for timely presentation of state law claims.  Plaintiffs argue that because Madden was

10  a prisoner, he must exhaust his administrative remedies through all levels of CDCR grievance

11  procedures.  Plaintiffs argue that they are entitled to tolling of the statute of limitations for the

12  period of time Madden spent exhausting his administrative remedies through the prison's

13  grievance procedure.  The relevant six month statute of limitations does not begin to run until

14  after the inmate has exhausted his administrative remedies, citing *Wright v. State of California*,

15  122 Cal. App. 4th 659, 671 (2004).  The time that a litigant pursues his administrative remedies is

16  excluded from the six month time limit for filing court action.

17           Plaintiffs acknowledge that the records requested by Defendants to be judicially noticed

18  are subject to judicial notice, but argue that they are not determinative that Plaintiffs' state law

19  claims are time barred.  Plaintiffs are entitled to tolling of the limitations period.  (ECF No. 37, p.

20  9, line 14.)  Madden was attempting to exhaust his administrative remedies from December 29,

21  2016 to January 2018.  (ECF No. 1, ¶¶ 2–3.)  Plaintiffs' complaint properly pleads compliance

22  with the California Government Claims Act.  (ECF No. 1, ¶ 41.)

23           Plaintiffs' factual allegations are sufficient to state a claim against Defendant Silva for

24  violation of the Bane Act.  The complaint should be liberally construed, and the Court has

25  liberally construed the allegations in its screening order.  The Court found the allegations were

26  sufficient for the elements of the Bane Act against Silva.  Silva argues that the allegations for the

27  Bane Act are solely based on speech.  Silva would have the Court look no further than his threats,

28  but all of the circumstances faced by Madden when Silva threatened him should be considered.

1    Madden had just been beaten and dragged by Hicks, in response to Madden attempting to grieve

2    denial of his medications.  Injured and in pain, and in restraints, Madden was in a cage.  Almost

3    immediately after medical staff concluded their examination, Silva threatened Madden,

4    accompanied by Hicks, with fraudulent disciplinary charges and Ad-Seg placement if Madden did

5    not refrain from complaining about being attacked by Hicks.  Silva was threatening Madden

6    while the other person present was his abuser, Hicks.  A reasonable person in the same situation

7    would have perceived a threat of violence.

8          Plaintiffs' allegations are sufficient to state a First Amendment retaliation claim against

9    Silva.  Silva contends that the allegations are insufficient to allege retaliatory intent.  Intent rarely

10   can be plead in a complaint and a chronology of events from which retaliation can be inferred is

11   sufficient.  Silva would have the Court focus solely on the verbal threats, while ignoring the

12   chronology of events that led up to the threats.  The allegations are sufficient that Silva's threats

13   were motivated solely by a retaliatory intent.  Madden complained about his medications.  (ECF

14   No. 1, ¶¶ 12–14.)  Madden was beaten in response and remained in a cage for two hours when he

15   was confronted by both Silva and Hicks.  Silva specifically referred to Madden "pushing claims"

16   and filing appeals.  (*Id.* ¶ 19.)  An inference can be made that Silva sought to prevent additional

17   complaints from Madden.  Madden's earlier complaints were the catalyst provoking Silva to

18   suppress further grievances from Madden.

19          **D.    Defendants' Reply**

20          The state law claims are time barred.  Judicially noticeable facts show Madden did not file

21   his state law claims within six months after his government claim was rejected.  Madden had until

22   December 29, 2017 to file his complaint.  Plaintiffs' tolling argument should be rejected for two

23   reasons.  Plaintiffs rely on documents attached to their opposition, not those in the complaint or

24   subject to judicial notice.  The complaint does not say if Madden exhausted his administrative

25   remedies before or after he completed the Government Claims process.  Madden's obligation to

26   exhaust the administrative remedies available to prisoners is independent of the obligation to

27   comply with the Government Claims Act.  (ECF No. 43 (citing cases).)  Madden's efforts to

28   exhaust his administrative remedies did not toll his obligations under the Government Claims

1    Act.  The judicially noticeable facts show Madden did not bring his state law claims against Silva

2    and Hicks within six months of the rejection of his government claim.

3         Plaintiffs' complaint does not accuse Silva of violating the Bane Act.  It only accuses

4    Defendant Hicks of a Bane Act violation.  A liberal construction of the complaint should not add

5    essential elements.

6         If a Bane Act claim is alleged, Defendants argue Plaintiffs' complaint fails to state a Bane

7    Act claim against Defendant Silva.  Defendants argue that there are insufficient facts showing

8    Defendant Silva intentionally interfered with First Amendment rights by "threats, intimidation or

9    coercion."  The complaint contains no factual allegations showing Lieutenant Silva used any

10   force on Madden, was present when any force was used on Madden, or ever threatened Madden

11   with violence.  Defendant Silva only used words after Officer Hicks used force on Madden.

12   Speech alone is insufficient to state a Bane Act claim because it did not include threats of

13   violence.  Officer Hicks accompanying Defendant Silva is not a "threat" because the allegations

14   do not state that Defendant Silva was aware Officer Hicks used force on Madden or was

15   responsible for placing Madden in Ad-Seg.  There are no factual allegations in the complaint

16   showing Madden actually feared Lieutenant Silva would carry out any violence.

17        Plaintiffs also fail to state a First Amendment claim against Lieutenant Silva.  There are

18   insufficient facts showing Lieutenant Silva intentionally retaliated against Madden because of his

19   protected conduct.  There are also no factual allegations showing Lieutenant Silva was aware

20   Madden had any grounds to file a grievance against Officer Hicks.  Defendants argue that

21   Plaintiffs' arguments in the opposition are based on facts that are not in the complaint.  (ECF No.

22   43, p. 9.)  The Court should not make inferences based upon unfounded speculation.  Because

23   there are no factual allegations showing Lieutenant Silva knew Madden had not committed

24   battery on a staff member or knew Madden intended to file a legitimate grievance against Officer

25   Hicks for assaulting him, the complaint does not plausibly allege Lieutenant Silva intentionally

26   threatened Madden with false disciplinary charges in order to suppress his legitimate grievance.

27   The complaint does not allege that Silva made his statement after Madden expressed he would

28   file a grievance.

6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.     Discussion**

**A.     Request for Judicial Notice**

Defendants request the Court take judicial notice of certain documents.  (ECF No. 31-2.) Rule 201(b) of the Federal Rules of Evidence provides that a court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).  A court may also take judicial notice of court filings and the contents of public records.  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

The Court will take judicial notice of Madden's Government Claim Form, filed on June 9, 2017 as GCP No. 17005837 and the Written Notice of Rejection of Claim of Plaintiff's Government Claims Form, GCP No. 17005837, rejected on June 29, 2017.  (ECF No. 31-2, pp. 5, 7.)  These documents are not subject to reasonable dispute as they are public records that can be accurately and readily determined.  *See Clarke v. Upton*, 703 F. Supp. 2d 1037, 1042 (E.D. Cal. 2010) ("taking judicial notice of the filing date and content of the Tort Claims and their rejection by the County, on the grounds that the documents are matters of public record and sets forth facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.'"); *Davis v. Zimmerman*, 2018 WL 1806101, at *6, n.5 (S.D. Cal. 2018) (taking judicial notice of claim and rejection); *Placencia v. United States*, 2017 WL 3017708, at *2 (S.D. Cal. 2017) (taking judicial notice of claim).

The Court cannot take judicial notice of the documents submitted in opposition to the motion to dismiss:  (1) Declaration of Kathleen Madden; (2) certified mail receipts; (3) Letter dated December 29, 2016 from Michael Madden re: submission of appeal; (4) Inmate Appeal 602; (5) Letter dated June 1, 2017 re: Staff Complaint Response (Second Level); (6) Letter dated April 19, 2017 re: screening at second level; (7) Form 22 Request for Interview; (8) Inmate Appeal 602 Appeal cancellation/denial; (9) Letter from Michael Madden dated August 2, 2019, and letter dated August 26, 2019; (10) email string dated September 25, 2020; and (11) Letter

7

1  dated September 2020 from Kathy Madden to Secretary Ralph Diaz.  (*See* ECF No. 37, pp. 18–

2  46.)

3          The Court is unable to take judicial notice of the documents attached to the Plaintiffs'

4  opposition.  These documents do not qualify as documents for which judicial notice under Rule

5  201 is appropriate.

6          The Court, however, may consider documents attached to the complaint.  Documents

7  attached to the complaint and incorporated therein by reference are treated as part of the

8  complaint when ruling on a Rule 12(b)(6) motion.  *In re NVIDIA Corp. Secur. Litig*., 768 F3d

9  1046, 1051 (9th Cir. 2014).  The Court will consider the documents attached to the complaint, as

10  discussed *infra.* (ECF No. 1, pp. 19–20.)

11          **B.      Government Tort Claims Act**

12          Under the California Tort Claims Act, set forth in California Government Code sections

13  810 *et seq.*, a plaintiff may not bring a suit for monetary damages against a public employee or

14  entity unless the plaintiff first presented the claim to the California Victim Compensation and

15  Government Claims Board ("VCGCB"), and the VCGCB acted on the claim, or the time for

16  doing so expired.  "The Tort Claims Act requires that any civil complaint for money or damages

17  first be presented to and rejected by the pertinent public entity."  *Munoz v. California*, 33 Cal.

18  App. 4th 1767, 1776 (1995).  The purpose of this requirement is "to provide the public entity

19  sufficient information to enable it to adequately investigate claims and to settle them, if

20  appropriate, without the expense of litigation."  *City of San Jose v. Superior Court*, 12 Cal. 3d

21  447, 455 (1974) (citations omitted).  Compliance with this "claim presentation requirement"

22  constitutes an element of a cause of action for damages against a public entity or official.  *State v.*

23  *Superior Court (Bodde)*, 32 Cal. 4th 1234, 1244 (2004).  Thus, in the state courts, "failure to

24  allege facts demonstrating or excusing compliance with the claim presentation requirement

25  subjects a claim against a public entity to a demurrer for failure to state a cause of action."  *Id.* at

26  1239 (fn. omitted).

27          To be timely, a claim must be presented to the VCGCB "not later than six months after

28  the accrual of the cause of action."  Cal. Govt. Code § 911.2.  Thereafter, "any suit brought

against a public entity" must be commenced no more than six months after the public entity rejects the claim.  Cal. Gov. Code, § 945.6, subd. (a)(1).  Federal courts must require compliance with the California Tort Claims Act for pendant state law claims that seek damages against state employees or entities.  *Willis v. Reddin*, 418 F.2d 702, 704 (9th Cir. 1969); *Mangold v. California Public Utilities Commission*, 67 F.3d 1470, 1477 (9th Cir. 1995).  State tort claims included in a federal action, filed pursuant to 42 U.S.C. § 1983, may proceed only if the claims were presented in compliance with the applicable exhaustion requirements.  *Karim-Panahi v. Los Angeles Police Department*, 839 F.2d 621, 627 (9th Cir. 1988); *Butler v. Los Angeles County*, 617 F. Supp. 2d 994, 1001 (C.D. Cal. 2008).

Defendants claim that Plaintiffs' case is untimely because Madden failed to file the action within six months of rejection of his government claim.  Plaintiffs argue that the time to file the action following rejection of the government claim is tolled while Madden pursued his exhaustion of his administrative remedies.

### 1.    Split of Authority

There is a split of authority in California regarding whether the time period for filing an action is tolled while a plaintiff is exhausting administrative remedies.  Under one set of cases, the six month deadline for Plaintiffs to file suit on state law claims was tolled until Madden had fully exhausted the available administrative remedies on those same claims.  Another set of cases hold that no tolling is permitted.  None of these cases are controlling precedent.

As a general proposition, the statute of limitations is tolled while a plaintiff pursues administrative remedies.  *Elkins v. Derby*, 12 Cal. 3d 410, 414 (Cal. 1974).  "[W]henever the exhaustion of administrative remedies is a prerequisite to the initiation of a civil action, the running of the limitations period is tolled during the time consumed by the administrative proceeding."  *Elkins*, 12 Cal. 3d at 414 (citations omitted.)  Pursuing administrative remedies on one legal remedy tolls the statute as to other legal remedies: "the principle that regardless of whether the exhaustion of one remedy is a prerequisite to the pursuit of another, if the defendant is not prejudiced thereby, the running of the limitations period is tolled '[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one.'"  *Elkins*, 12 Cal. 3d at

414 (internal quotes omitted).  The California Supreme Court has noted that "the suspension of the running of the statute of limitation period . . . will not frustrate the . . . primary purpose of preventing surprise of claims" and being promptly apprised of claims.  *Id.* at 417–18.  Suspension of the statute of limitations also fosters the policy of preventing "duplicative proceedings [which] are surely inefficient, awkward and laborious."  *Elkins*, 12 Cal. 3d at 414.

Plaintiffs correctly argue that in *Wright v. State of California*, the six-month deadline to file an action after VCGCB rejection was tolled during the time the plaintiff exhausted available administrative remedies via CDCR's inmate appeal process.  (ECF No. 37, p. 8.)  *Wright* held that, "[s]ince a litigant must exhaust administrative remedies before filing a court action, we exclude the time consumed by the administrative proceeding from the time limits that apply to pursuing the court action.  This procedure serves the orderly administration of justice.  Thus, we exclude the time during which a litigant reasonably pursues his administrative remedy from the six-month time limit for filing a court action after the Board of Control rejects a Government Tort Claim."  *Wright v. State of California*, 122 Cal. App. 4th 659, 671 (2004).  In *Leos v. Rasey*, No. 1:14-CV-02029 LJO JLT PC, 2017 WL 569534, at *2 (E.D. Cal. Feb. 13, 2017), the court, citing *Wright*, held that the six-month deadline to file an action after VCGCB rejection was tolled during the time the plaintiff exhausted available administrative remedies via CDCR's inmate appeal process.  In *Bagdasaryan v. City of Los Angeles*, No. 15-cv-01008-JLS-KES, 2019 WL 7985185, at *7 (C.D. Cal. Nov. 26, 2019), the court excluded time while plaintiff exhausted his administrative remedies, but refused to exclude time for initially filing the claim with the VCGCB: "California courts 'exclude the time during which a litigant reasonably pursues his administrative remedy from the six-month time limit for filing a court action after the Board of Control rejects a government tort claim however, this tolling applies after a person presents a claim under the Government Claims Act; it does not toll the time for filing a claim in the first instance."  (citations omitted.)  *See also Beauchamp v. Delatorre*, No. C 13-2098 CRB (PR), 2014 WL 12778296, at *7 (N.D. Cal. Dec. 16, 2014) (plaintiff correctly notes that time during which a litigant reasonably pursues his administrative remedies is excluded from the six-month time limit for filing a court action after VCGCB rejects a tort claim), *aff'd sub nom. Beauchamp*

1   *v. Doglietto*, 698 F. App'x 396 (9th Cir. 2017) (the district court properly dismissed Beauchamp's

2   state law assault and battery claim as time-barred because, even with the benefit of all arguably

3   applicable equitable tolling, Beauchamp failed to file this action within the applicable statute of

4   limitations); *see Jones v. Wong*, No. 2:15-CV-0734 TLN AC P, 2018 WL 2297056, at *6 (E.D.

5   Cal. May 21, 2018), report and recommendation adopted, No. 2:15-CV-00734-TLN-AC, 2018

6   WL 4698316 (E.D. Cal. Sept. 28, 2018) ("since a litigant must exhaust administrative remedies

7   before filing a court action, [the court] exclude[s] the time consumed by the administrative

8   proceeding from the time limits that apply to pursuing the court action.")

9       Under this set of cases, the six month deadline for Madden to file suit on the state law

10   claims was tolled until he had fully exhausted the available administrative remedies on those

11   same claims.

12       In the line of cases relied upon by Defendants, the statute of limitations was not tolled

13   while a plaintiff exhausted after the VCGCB rejected the state law claims.  Defendants argue that

14   Plaintiffs' tolling argument should be rejected.  Defendants rely on *McGinnis v. Ramos*, No. 15-

15   cv-2812 JLS (JLB), 2017 WL 474054, *3 (S.D. Cal. Jan. 3, 2017), report and recommendation

16   adopted, No. 15-CV-2812 JLS (JLB), 2017 WL 469025 (S.D. Cal. Feb. 3, 2017).  In *McGinnis*,

17   the court said that while "Plaintiff was entitled to tolling of statute of limitations applicable to his

18   § 1983 claims while he exhausted his prison administrative remedies, Plaintiff is not entitled to

19   this tolling with respect to his state law claims.  Plaintiff's obligation to exhaust his administrative

20   remedies under the PLRA applies only to his § 1983 claims and 'is independent of the obligation

21   to comply with the Government Claims Act.'"  The court noted that Mr. McGinnis could have

22   filed an action in state court asserting his state law negligence claim at any time after the notice of

23   rejection of the claim was mailed to him.  The court instructed that if Mr. McGinnis wanted to

24   also pursue a § 1983 claim, he could have amended his complaint in that action or filed a second

25   action to assert his § 1983 claim after exhausting prison administrative remedies.  *Id.*

26       In *Martinez v. Tilton*, No. 1:10-cv-01501-SKO PC, 2013 WL 5670869, at *3 (E.D. Cal.

27   Oct. 16, 2013), the plaintiff failed to file his claim with VCGCB, which he recognized by filing

28   an application for leave to file a late claim, which was denied.  The court refused to apply

1    equitable tolling because "the prison's inmate appeals process and the Government Claims Act

2    process are separate processes and there is no support for a finding that the allegedly improper

3    cancellation of Plaintiff's inmate appeal had any effect whatsoever on his ability to timely present

4    his Government Claims Act claim."  This case held that there is no equitable tolling to timely

5    present the Government Claim Form in the first instance.

6        In *McPherson v. Alamo*, No. 15-cv-3145 EMC, 2016 WL 7157634, at *6 (N.D. Cal. Dec.

7    8, 2016), the court held that the plaintiff was not entitled to tolling with respect to his state law

8    claims. The plaintiff's obligation to exhaust his administrative remedies under the PLRA applies

9    only to his § 1983 claims and "is independent of the obligation to comply with the Government

10   Claims Act."  The court stated that "Mr. McPherson could have filed an action in state court

11   asserting his state law negligence claim at any time after the notice of rejection of the claim was

12   mailed to him" and thereafter amend his complaint to add the §1983 claims once exhausted.  *Id.*

13       In *Parthemore v. Col*, 221 Cal. App. 4th 1372, 1376 (2013), the plaintiff failed to fully

14   exhaust his administrative remedies through CDCR.  The court acknowledged that obligation to

15   exhaust the administrative remedies available to prisoners concerning the medical treatment they

16   receive is independent of the obligation to comply with the Government Claims Act.  *Id* at 1376.

17   However, unlike in Madden's case, tolling the statute of limitations was not at issue in

18   *Parthemore* because the defendant had abandoned the argument that the plaintiff failed to allege

19   compliance with the Government Claims Act.  *Id.* at 1378.

20       In *Anderson v. Ferguson*, No. 20-CV-04368-HSG, 2022 WL 767191, at *5 (N.D. Cal.

21   Mar. 14, 2022), the court dismissed claims for failure to file state law claims within six months

22   from the date of the notice of rejection.  However, in *Anderson,* the argument of equitable tolling

23   was not raised to the court, as is presented in Plaintiffs' opposition.

24       Under this set of cases, the six month deadline for Plaintiffs to file suit on state law claims

25   is <u>not</u> tolled while Madden exhausted the available administrative remedies on other claims.

26                    2.    The Court is Unable to Rule on Tolling

27       California courts "exercise their inherent equitable powers to 'soften the harsh impact of

28   technical rules'" through the doctrine of equitable tolling.  *Saint Francis Mem'l Hosp. v. State*

1   *Dep't of Pub. Health*, 9 Cal. 5th 710, 725 (Cal. 2020) (quoting *Addison v. State of California*, 21

2   Cal.3d 313, 578 P.2d 941, 942 (1978)).  Equitable tolling may be appropriate where there is (1)

3   timely notice, (2) lack of prejudice to the defendant, and (3) reasonable and good faith conduct on

4   the part of the plaintiff.  *Id*.  Equitable tolling "fosters the policy of the law of this state which

5   favors avoiding forfeitures and allowing good faith litigants their day in court." *Addison*, 21

6   Cal.3d at 320. Equitable tolling avoids the hardship of compelling plaintiffs to pursue several

7   duplicative actions simultaneously on the same set of facts (where the tolling is based on pursuit

8   of an alternative remedy).  *Brome v. California Highway Patrol*, 44 Cal. App. 5th 786, 794–95

9   (2020); *see Elkins*, 12 Cal. 3d at 417 (setting forth policy reasons for tolling statute of

10  limitations).  "Tolling lessens the costs incurred by courts and other dispute resolution tribunals,

11  because disposition of a case filed in one forum may render proceedings in the second

12  unnecessary or easier and less expensive to resolve." *Downs v. Dep't of Water & Power of City

13  of Los Angeles*, 58 Cal. App. 4th 1093, 1100 (1997).

14          Here, Madden filed the relevant government claim (GCP No. 17005837) on May 13,

15  2017, and the VCGCB rejected his claim on June 29, 2017.  Madden, therefore, had until

16  December 29, 2017, to file a complaint regarding his state law claims.  He did not file the action

17  by December 29, 2017.

18          The Court finds that equitable tolling should apply to this case given California's policy

19  considerations and the first line of cases.  There is a factual issue, however, which the Court

20  cannot resolve regarding the dates when Madden was attempting to file his complaint.  Madden's

21  signed complaint (alleging the state law claims) and his verification to the complaint are both

22  dated December 23, 2017—within the six month limitations period.  (ECF No. 1, pp. 17–18.)

23  These documents—the complaint and verification—show that the Madden intended to file the

24  complaint within the six month deadline.[1]  The complaint also attaches a letter signed by Madden

25  which forwards the complaint for filing.  The letter is undated, but is signed and addressed to the

26  _____

27  [1] Under the prison mailbox rule, a document is deemed served or filed on the date a prisoner signs the document and
gives it to prison officials for mailing.  *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (establishing the prison
mailbox rule); *Campbell v. Henry*, 614 F.3d 1056, 1059 (9th Cir. 2010) (applying the mailbox rule to both state and

28  federal filings by incarcerated inmates).  Madden signed the complaint on December 23, 2017.  (ECF No. 1, p. 17.)

1   Clerk of this Court stating that the "complaint is being electronically filed here at the prison

2   through the CSP-Lancaster Law Library."  (ECF No. 1, p. 19.)  The language indicates that

3   Madden was contemporaneously transmitting his complaint for filing because this same letter

4   says Madden is also submitting his Trust Account for *in forma pauperis* consideration.  (*Id.*)  As

5   noted, under the prison mailbox rule, a document is deemed served or filed on the date a prisoner

6   signs the document and gives it to prison officials for mailing.  Had Madden's complaint been

7   filed on that date, his complaint unquestionably would have been timely.

8        However, the complaint actually appears on the Court's docket as filed on February 22,

9   2018.  It appears that between when Madden signed the complaint (December 23, 2017) and the

10  complaint's filing (February 22, 2018), there was some "electronic glitch."  Madden attached

11  another letter to the complaint addressed to the Clerk of Court dated February 6, 2018, which

12  says, "I tried to Electronically file my enclosed complaint, however, CSP-Lancaster is NOT in

13  your Judicial District and they could NOT electronically file it in the Eastern District who HAS

14  Jurisdiction." (ECF No. 1, p. 20 (emphasis in original).)  The complaint was then filed on the

15  Court's docket on February 22, 2018.  It appears that Madden attempted to file the complaint

16  within the six months: the complaint and verification are dated December 23, 2017, but it was not

17  filed due to the institution's electronic filing procedures.  Thus, there is an ambiguity as to what

18  happened between December 23, 2017, when Madden signed the complaint, and the actual filing

19  date of February 22, 2018.

20        As mentioned above, to determine whether equitable tolling may extend a statute of

21  limitations, courts must analyze whether a plaintiff has established the doctrine's three elements:

22  timely notice to the defendant, lack of prejudice to the defendant, and reasonable and good faith

23  conduct by the plaintiff.  *Saint Francis Mem'l Hosp.*, 9 Cal. 5th at 725–26.  Each of the three

24  factors in California's test for equitable tolling "requires a practical inquiry."  *Cervantes v. City of*

25  *San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993) (California's fact-intensive test for equitable tolling

26  is more appropriately applied at the summary judgment or trial stage of litigation.)  The

27  California Supreme Court recognizes that equitable tolling is applied flexibly to "ensure

28  fundamental practicality and fairness."  *J.M. v. Huntington Beach Union High Sch. Dist.*, 2 Cal.

14

1    5th 648, 658 (2017).  "As with other general equitable principles, application of the equitable

2    tolling doctrine requires a balancing of the injustice to the plaintiff occasioned by the bar of his

3    claim against the effect upon the important public interest or policy expressed by the

4    [Government] Claims Act limitations statute."  *J.M*., 2 Cal. 5th at 658.

5           Here, the Court cannot determine the factual issues involved in the three elements of

6    equitable tolling.  First, the limited facts show that Defendants had timely notice of the claims.

7    Madden filed the Government Claim Form and was also pursuing CDCR administrative

8    remedies, although additional facts may be relevant.  Second, the Court cannot determine if

9    Defendants have been prejudiced.  Defendants have not argued that they have been prejudiced

10   from the delay in filing suit, but evidence should be presented from both sides on prejudice.  This

11   argument would be one for a possible summary judgment where evidence can be submitted.

12   Third, the facts thus far show that Madden was acting in good faith.  Based upon the documents

13   attached to the complaint, Madden was attempting to comply with the six-month filing

14   requirement.  He prepared and signed the complaint within the six months and gave it to the

15   institution's library personnel for filing.  While he was in error that electronic filing could occur,

16   the documents indicate his good faith in complying with the statute of limitations.  (ECF No. 1,

17   pp. 17–20.)  There may be additional facts not currently before the Court which influence these

18   three elements.  Thus, at the motion to dismiss stage, the Court cannot determine the factual

19   issues involved in equitable tolling.

20                    **C.      The Bane Act**

21          Section 52.1 of the Bane Act "provides a cause of action for violations of a plaintiff's state

22   or federal civil rights committed by 'threats, intimidation, or coercion.'"  *Chaudhry v. City of Los*

23   *Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014) (quoting Cal. Civ. Code § 52.1).  Although the

24   Bane Act does not require the "threat, intimidation, or coercion" to be independent from the

25   constitutional violation, it requires specific intent to violate the victim's rights.  *See Reese v. Cty.*

26   *of Sacramento*, 888 F.3d 1030, 1043–44 (9th Cir. 2018).  In an excessive force claim, a defendant

27   must intend not only the force, but also its unreasonableness.  *See id*. at 1045.  A plaintiff only has

28   a cause of action under the Bane Act in her capacity as a successor-in-interest.  *See Medrano v.*

1     *Kern Cty. Sheriff's Officer*, 921 F. Supp. 2d 1009, 1016 (E.D. Cal. 2013).

2          Because Plaintiffs' allegations underlying the excessive force and retaliation claims may

3 give rise to the inference that Defendant Silva's threat had specific intent, (ECF No. 1, ¶¶ 19–20),

4 the Court concludes that Plaintiffs have sufficiently pleaded their Bane Act claim.  Silva

5 threatened Madden for "pushing claims," and did so while in the presence of Hicks, and Silva

6 relented only when Madden "agreed not to file any inmate appeals or complaints against staff."

7 (*Id.*)  Plaintiff need not allege that Silva knew Hicks had beaten Plaintiff because a reasonable

8 inference is that Silva knew of the assault based on Silva's threat, "Ok, you can either call this

9 squashed, go back to your cell, and this is all over without you pushing any claims that staff

10 assaulted you."  (*Id.* (emphasis added).)  The Court concludes that Plaintiffs have sufficiently

11 pleaded a claim under the Bane Act in their capacity as Madden's successors-in-interest.

12          Defendant Silva argues he was not named in the Bane Act claim.  Presumably this

13 argument is made because Claim Three "names" only Hicks in the Bane Act.  (ECF No. 1, p. 15.)

14 However, the Court must liberally construe all of the *pro se* allegations, and may not merely rely

15 upon titles.  The factual allegations support such a Bane Act claim as the Court found in its

16 screening order.

17                 **D.**      **Retaliation**

18          Allegations of retaliation against a prisoner's First Amendment rights to speech or to

19 petition the government may support a section 1983 claim.  *Rizzo v. Dawson*, 778 F.2d 527, 532

20 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v.*

21 *Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First

22 Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some

23 adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that

24 such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did

25 not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559,

26 567−68 (9th Cir. 2005); accord *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

27          Plaintiffs sufficiently allege a claim for retaliation against Defendant Silva.  Defendants

28 argue that there are no allegations showing Silva intentionally retaliated against Madden because

of his protected conduct.  To the contrary, Plaintiff alleges that Defendant Silva threatened to file fabricated disciplinary charges against him and place him in Ad-Seg if Plaintiff reported the incident with Defendant Hicks.  The complaint alleges that only when "Madden agreed not to file any inmate appeals or complaints against staff" was he "then allowed to return to his cell."  (ECF No. 1, ¶ 20.)  After the incident was reported by other inmates and Plaintiff's clinician, Plaintiff was placed in Ad-Seg for nearly a week.

Defendants further argue that the complaint does not allege that Silva made his statement after Madden expressed he would file a grievance.  Defendants read the complaint too narrowly.  Plaintiff alleges that Silva said, "Ok, you can either call this squashed, go back to your cell, and this is all over without you pushing any claims that staff assaulted you.  Or, I can write you up for battery on a peace officer, send you to the hole, and we can hash all of this out in hearings and appeals."  (*Id.* ¶ 19.)  This allegation indicates that Silva was concerned with Madden filing an appeal ("pushing paperwork") and extracted a promise not to do so ("Madden agreed not to file any inmate appeals or complaints against staff").  (*Id.* ¶¶ 19–20.)  As stated in this Court's screening order, the complaint plausibly alleges Silva intentionally threatened Madden with false disciplinary charges and placement in Ad-Seg in order to suppress his grievance.

### V.   <u>Order and Recommendation</u>

Accordingly, IT IS HEREBY ORDERED that Defendants' request for judicial notice, (ECF No. 31-2), is GRANTED and Plaintiffs' request for judicial notice, (ECF No. 37, pp. 18–46), is DENIED, as described *infra*, in Section IV.A.

Further, it is HEREBY RECOMMENDED that Defendants' Motion to Dismiss, (ECF No. 31), be DENIED.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendation, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The parties are advised that failure to file objections

///

within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 7, 2023**                    /s/ *Barbara A. McAuliffe*
                                                        UNITED STATES MAGISTRATE JUDGE